We'll hear argument this morning. Case 15-1509, the U.S. Bank Nat. Assn. v. Village at Lakeridge. Mr. Cross? Mr. Chief Justice, may it please the Court. This case presents a paradigm example of a mixed question of law and fact. It's a polar case. The historical facts are not in dispute, and the legal measure is settled. The question today is what standard of review should govern the application of the legal standard to the undisputed facts? What is the legal standard? The legal standard should be de novo. The legal standard, as articulated by the Ninth Circuit, was a two-pronged test. Whether the parties' relationship was sufficiently close that it was comparable to the factors enunciated in 10131 of the Bankruptcy Code, and whether the parties transacted at arm's length. It's a two-pronged test. Historically, when this Court has applied the two prongs, that means, let's assume the district court had found that this couple was an intimate couple that lived together, exchanged payments of their expenses, were like a married couple, not like the facts found. But, in fact, they transacted this in an arm's length way. He did due diligence. He thought about it. He talked to investors. They all said, this is a great deal, take it. So it has the indicia of arm's length, but it is almost an insider relationship because he's essentially married to this woman. Both elements are required, Your Honor. That's fascinating. It seemed it's not required with traditional statutory insiders. With statutory insiders, we presume that the transaction is tinged. Why don't we make the same presumption if these non-statutory insiders are just like insiders? The test that we have, which is settled, is the two-pronged test. And with respect to the second element of the test, the first test is more of a presumption. What's the nature of the party's relationship? But the test goes to the nature of the transaction. And there's a subsidiary test for arm's length. And the question is, did the parties transact as if they were strangers? It doesn't include intent. It's an objective status test. You can, for example, have a close relationship and have an intent to transact with a party, but you can nevertheless purchase through a free market transaction. That would be an arm's length transaction.   Sotomayor, I'm sorry.  I know the question was presented, and we denied it. Correct. So why did you think it was important if you're defending the standard now? Why did you ask us to take the question if you think the standard is okay? I thought that when we asked for cert on that question, we thought the standard lacked sufficient definition. But since the Court denied cert on that question, I'm just saying. You're living with it. I'm living with the standards that I have. That's exactly right. The Jones – the Court's approach to defining semen under the Jones Act is right on point for this case. You know, there as here, there's no definition of semen. There's no definition of what is an insider under the Bankruptcy Code. And there as here, the definition of insider and the definition of semen require the application of facts. But in those cases, the Court has drawn a distinction between clear error review attached to historical findings of fact made by the trial judge, and de novo review with respect to the guidelines and principle for the application of the statute. If you look at McDermott, for example, it was the appropriate function of the trial court to determine that the individual was a painter and that he was a member of the crew. But through the exercise of de novo review, the Court said you do not need to aid in navigation to qualify for semen status. So it sounds to me like you're taking the position that it is a mixed question, which means it has elements of both, but the standard of review should turn on which element the Court is addressing. In other words, you can have both parties to the case agree, yes, this is the standard of review, we agree, it's well settled, but the facts apply in different ways. Isn't that the factual part of the mixed question? And therefore, shouldn't those determinations be reviewed for clear error? Chief Justice Roberts, the factual portions, which are the underlying historical facts made by the trial court, should be reviewed for clear error. But the guidelines and principles that govern the application of the standard to those facts, that's de novo review. And that's what didn't happen. My hypothetical, the latter, are completely agreed upon. It's a dispute about facts. And therefore, the ultimate determination, it seems to me, would turn on clear error review. Not in this case, Your Honor, because the test lacks definition. Yes, it's a settled test, but it doesn't have sufficient definition. Do you think the parties are in agreement on the elements or the components of an arm's-length transaction, or do you think that is a question that requires more elaboration? That clearly requires more elaboration, Your Honor. We are at the Supreme Court. There's a dispute between the two parties with respect to whether intent is an element of arm's-length. That's exactly the type of determination that should be made by the appellate court. There's a lack of definition. The definition of court. Breyer. I don't know if that was the issue the Ninth Circuit thought it was facing. You say, of course, brute facts are a question of fact. Legal standard is a question of law. But sometimes implying a label to the brute facts which are undisputed is a question of fact. There's a good case in the Ninth Circuit you didn't find because it doesn't tell you the answer. United States v. 53, eclectus parrots. Is an eclectus parrot a wild bird? The statute says you can't bring in a wild bird. No. They agreed on the facts. If you, in fact, call in a zoologist, I would say putting the label on the fact is a question of fact. If you call in a lawyer, what does it mean with statute? That's a question of law. And the beauty of this case is it's somewhat ambiguous. So, so, so, which, what you're, I mean, you know, is that a goldfinch over there? I made a mistake. No, it isn't actually there. But if I had a problem with the label and called in an ornithologist, although we're agreed exactly on what it looks like, that's a factual question. You see? So, so, so we know that, what you're telling us so far. But what is it about this case that suggests what they were, you and the other side were disagreeing in the lower courts? You both were agreeing about what's the, disagreeing about what's the label. But it was a legal matter, not the factual matter of whether the well-known phrase, arm's-length transaction, fits on these circumstances, which could be a factual matter. Your Honor, I would disagree that arm's-length is so well-known. It's unknown among lawyers. That's probably true. And that's who you're dealing with. In this case, in this case, arm's-length is being used as a measure to determine a status. It's not a settled, it's not a settled fact like in Linton. In Linton, the Court was looking for a fact, a factual determination with respect to arm's-length. Here, arm's-length is a term that's been invented by the appellate courts, derived from legislative history to say, if you satisfy this standard, then that is the second prong to measure whether or not you have insider status. But what if the definition was not, arm's-length was not invented by the Court here. Arm's-length is a legal concept that goes back beyond Blackstone. It's a familiar legal test for lawyers. And it seems to me that the application turns on a variety of factors. It's not – I would disagree that it's a familiar legal test, because the Ninth Circuit version of it. Ginsburg. Isn't it that they deal with each other as if they were strangers? Isn't that the definition? That's the subsidiary test, Your Honor. And if arm's-length was so settled, it would not need a subsidiary test. It's not a fact. It's not – there's not been a finding that it's a totality-of-circumstances approach. It's not settled that it requires intent. There are two different kinds of opinions. One says the test is an arm's-length transaction. Here are the following considerations that we think should be applied in determining whether something is an arm's-length transaction. And the second opinion says the test is arm's-length transaction, doesn't talk about considerations or factors, just assumes that everybody knows what that arm's-length is, and just says, here are the facts in this case, and then reaches a conclusion, well, this either is or isn't an arm's-length transaction. Now, it seems to me that on the first case, you would have a good reason for saying, well, when the Court tries to elaborate a test and considers factors and considerations, it assumes those things are more a part of the legal inquiry. But when the Court just says, here's our test, now here's the facts, and then reaches a conclusion, it seems like all of those facts, they're just facts. Your Honor, that – your second – your second example would be more reflective of trial courts finding arm's-length as a matter of fact. But it's important to remember here we're not solving for arm's-length. We're solving for insider status. And the arm's-length is just a measure to determine insider status. And there could be great clarification given to what that measure is. We could have four principles that would give greater definition to what arm's-length means. Alito, I think you're talking about two separate questions, and it's not your fault that the two are hard to separate, because we took one question and we didn't take the other. But the issue here is what is the standard of appellate review with respect to the standard that was applied by the Ninth Circuit? I take it that is the question. And the Ninth Circuit standard has two components. One is whether it was an arm's-length transaction. And if the definition of an arm's-length transaction is the one that Justice Ginsburg mentioned, which I think comes right out of Black's Law Dictionary, is it the kind of transaction in which strangers would engage? Isn't that a question of fact? Isn't that very close to a question of pure fact? The underlying components of the test are questions of fact. How did they engage? So for the trial – in this case, the trial court, it was a question of fact that there was no negotiation. It was a question of fact that they didn't – that there was no due diligence. Those were questions of fact. The question for the appellate court and the question that this case presents is what standard of review should have been applied to determine whether those facts satisfied the statutory measure so that this was – so that this – so that these litigants were non-statutory insiders. Sotomayor, it's more nuanced than that, because the lower court said that there was diligence appropriate to the amount of the investment. So that does sound like a factual finding, which is it was due under the circumstances. The lower court in this instance, Your Honor, made no determination with respect to whether the parties negotiated at arm's length. Never mentioned – never mentioned arm's length. Never mentioned if the parties negotiated as strangers. It just made the comment that it was the appropriate due diligence for an investment of $5,000, which in this case was none. This – this individual had never seen the property, had known nothing about the bankruptcy case, paid $5,000 for a $2.7 million claim. Sotomayor, you have an awful lot of strong arguments in this case on the facts, but it still doesn't answer why this is not a finding of fact as opposed to a conclusion of law. Because when he says this was diligence enough for a $5,000 investment, to me that sounds like a quintessential fact finding. How am I supposed to do that? As a judge, I think it's better left in the hands of a bankruptcy judge who deals with financial transactions all the time. No, I disagree. We're interpreting a statute. You know, there's no greater provision, no more important provision of the Bankruptcy Code than determining who is and who is not an insider. It cuts through everything. It determines payment priority. It determines your ability to cast with a single vote a plan that will affect the rights of all the other creditors in the case. And that determination should not be relegated to a totality of the circumstances finding of fact made by the trial court that receives minimal appellate review. Alito, which entity is better positioned, based on role and experience, to determine whether a particular transaction is the kind of transaction in which strangers would engage? The bankruptcy judge or the panel of the court of appeals? I believe that the underlying facts are better determined by the bankruptcy judge. The quantum of facts satisfy the statutory measure for the appellate court. But there are two prongs here. So the first prong of this test is whether the party's relationship is sufficiently close, that the relationship is comparable to that in 10131. Certainly, an appellate court is better positioned to say what relationship is comparable to 10131. That is not a trial court decision. No, I think you have a strong argument on that. But on the second part, whether it's an arm's-length transaction, why is it preferable for a court of appeals panel to decide whether this is the kind of transaction that strangers would engage in? So in Pierce, the Court recognized that sometimes findings develop over time. And we may reach a point, we may very well reach a point, where arm's-length is sufficiently settled so that it's for the trier of fact and not for the appellate panel, but we're not there. Yes. Ginsburg. What would you add? What would you add to, is it comparable to a transaction between strangers? What else would you add? I would add four. I'd add at least four governing principles. Was the transaction marketed? Did negotiations occur? Did due diligence occur? And in the absence of those three factors, was there some indication or finding by the trial court that fair market value was paid? Giving those four contours to what it means to negotiate as if you're strangers would be a great assistance in clarity. You know, I was reviewing the cases over the weekend, and in Chandris, Justice O'Connor writing for the Court was reviewing 50 years of history in determining the Seaman Act, the Seaman status. And she commented that the absence of definition and clarity, the absence of giving general principles, had led the lower courts to create a labyrinth and they'd gotten lost in it. I urge you not to do the same thing with insider status. I can tell you as a practitioner there is no greater safeguard against a crammed down plan than the requirement that there be a non-insider class consenting that's impaired. That cannot be left to the ad hoc determination of each trial court. It's particularly troublesome in bankruptcy. What if you had a situation where the underlying, the legal rule was satisfied if someone was a resident of Nevada? Is that a factual determination reviewed for clear error? I'm sorry. I did not understand the question. Well, you have a statute, and the question is, is somebody a resident of Nevada? If he is, he gets some benefits. If not, is the determination that he is or is not a resident of Nevada? Reviewed for clear error? Yes. Okay. Now, let's say that the determination turns not simply where his residence is, but also where his domicile is. Is that determination of resident that he qualifies under the statute still just a question of reviewed for clear error? The predicate facts to derive a domicile conclusion would be reviewed for clear error, but the legal determination of what is a domicile would be something that was de novo reviewed by the appellate court. So what is, how do you tell if you're in the first category, which, you know, what constitutes residence may or may not be clear under the law, there may be difficult issues, he spends 4 months in Florida or whatever, and at what point does that become something that you need to have de novo review of? These cases are difficult. I mean, when you review them, it's very difficult. And typically there's a weighting. And the Court has said, the Court has said in cases involving intent, credibility and motivations, those tilt towards the trial court, and the trial court's better positioned, and it typically turns on who is better positioned to make the conclusion. In those cases, however, and that distinguishes Pierce, Cooter, that line of cases, they all deal with things that are inherently in the position of the trial court. But where the issue involves the interpretation of a statute, that's the differentiating factor. Well, I agree with you that they're difficult, but I think it's pertinent whether they're more difficult for the district judge or more difficult for the court of appeals. And it seems to me that a lot of the issues we're talking about here are the sort of things that district court judges, bankruptcy court judges, look at all the time. But to get the intense factual record on a subsidiary issue and ask the court of appeals to look at it after the district court has already done it, I mean, the de novo review simply means you go through the factual determination a second time. I'm not quite sure that's desirable. I'm not suggesting that the appellate court reexamine whether they had a two-year romantic relationship or whether or not there was any due diligence. I'm suggesting that it was for the appellate court, through the exercise of de novo review, to say whether the existence of that romantic relationship was important or whether the exercise of due diligence was important. How would they do that? I mean, you know, it might be important in some instances. In some other instances, it wouldn't be. I mean, he had listed five factors, and then on, you know, at the end of this appendix, he has about four or five more factors. And I guess he saw the people. Did he see the people? Verrilli, Jr.: Yes. Breyer. Okay. He heard them. He saw them. He thinks, what is the nature of the relationship? And then he lists about nine different things. I mean, an appellate court won't see them. An appellate court will have a cold record. An appellate court probably can't go into the myriad details that will say in this situation whether it was as if between strangers or whether it wasn't. What do you want them to do? Verrilli, Jr.: Appellate courts all the time in the context of that. Breyer.  I'm not saying you can't. Verrilli, Jr.: No, I understand. Breyer. Why would you think it would be more accurate? Why would it be more accurate about whether this is or is not, as if this particular financial transaction was or was not as if between strangers? Verrilli, Jr.: Because there's a great level for a need for – there's a great need for uniformity in this area. I mean, that's another consideration. There's a substantial need for uniformity. Breyer. I'm not doubting that. I'm just doubting whether you could by having dozens of appellate courts starting to go through dozens of records, and each one is a little bit different in respect to the relationship, in respect to any one of these nine different factors, and that you think you're going to get uniformity. That's what I'm doubting. Verrilli, Jr.: There are 352 bankruptcy judges in this country. There should not be 352 views of who is and is not a non-statutory insider. We can provide greater – we can provide greater – I'm sorry. Kennedy, Jr.: And would part of your answer to Justice Breyer be that in this case, the subsidiary effects can all be conceded? The question is the conclusion you draw from them. Verrilli, Jr.: That's correct, Your Honor. I wish I could. Breyer. Is that an answer? Is that an answer? Didn't we just discuss that at the beginning of what I questioned? Didn't I just say sometimes, which you seem to agree, that applying a label, like Wild Bird or transaction, applying a label to a set of undisputed facts is itself  Verrilli, Jr.: Not in this circumstance. Never, you say? Verrilli, Jr.: I do not agree in this circumstance. You don't agree? Verrilli, Jr.: Because the fact is that sometimes it can be. Wait, wait. Do you or don't you agree that sometimes it's factual? Verrilli, Jr.: Sometimes it can be. All right. And what is the difference and why does that difference make a difference here? Verrilli, Jr.: It makes a difference here because the label that's being attached is a statutory conclusion. Because this is said, we are not solving for arm's length. We are solving for whether or not this individual was an insider or not an insider. And that's what differentiates it. That's what differentiates this case from Teva, that Your Honor wrote the opinion for the Court of just two years ago. You drew a distinction between a historical fact and a patent term and a statutory term. This is a statutory term. The Court is solving for who adjoins insider status under the Bankruptcy Code. Alito, Jr.: Can I ask you a question of drawing on your experience as a practitioner? In this case, and I suppose in other cases where this comes up, what is at issue is whether a plan of reorganization is going to be confirmed or whether the debtor is going to be liquidated. And from the perspective of bankruptcy judges in your experience, what is the dynamic regarding that determination? Do they have a tendency to try to achieve one result or the other? Verrilli, Jr.: In my experience, they have a tendency to be. It depends on the jurisdiction. Some jurisdictions are very pro-debtor and would lean towards confirmation. Bankruptcy is an area where form shopping is prevalent. My concern is that if you don't provide any uniformity here, we're going to have a race to the bottom.  Ginsburg. Well, that's what the bankruptcy judge tried to do. He said forget the arm's length. If the seller was under a disability, if the seller was insider, then that team travels with the transfer of the claim. But he lost on that, and that's not a question before us. But that would certainly be a way of getting uniformity here. If you say all you look to see is if the seller was an insider and if she was, that her status can't be removed. The insider status can't be removed by transferring the claim. I agree, and I would have liked to have had cert on that question, but that's true. Counsel, given your articulation, I'm not sure how your approach differs from that of the Solicitor General. The Solicitor General stops with the enunciation of the test. So the Solicitor General says that if the trial court announces the test, the appellate review stops there. That cannot be the test. If you're going to take that approach, the test has no meaning. If the bankruptcy court had correctly stated the test and then disregarded it and just applied its own test, as this Court did, it took the bench, looked out to all the bankruptcy courts in the country and said, I conclude that these five factors are sufficient to satisfy the statutory test. But nevertheless, there was something in the record which would support a clear error finding. The Ninth Circuit's test would have had no meaning. So the Solicitor General says as long as you say closeness and arm's length, the appellate analysis stops there. That's never the case when there's a test. It's always the appropriate function of the appellate courts to give meaning and implementation to the test. If you're going to have a test, then the appellate courts have to apply it. Certainly, the question of whether or not closeness or arm's length are the test would be subject to de novo review. So why would we stop there? Why wouldn't we say what does close and what does arm's length mean? They're not just words. Kagan. Kagan. Sometimes there are tests that we think are better formulated at a certain level of generality. And then we want to, you know, do case by case by case analysis to figure out what exactly that test means and how it applies in particular circumstances. We don't think the right thing is to set out, you know, a more specific legal test. We think that it will be filled in by factual development. And that seems what this is, isn't it? That's the mistake that the Court made for 50 years in interpreting the Jones Act. For 50 years, it was a generalized definition that was derived from admiralty and there were no specific contours or principles applied to it. And that led to, as Justice O'Connor wrote, a labyrinth. And the courts got lost in the definition. The same thing is going to occur here. I am not suggesting, I know I would lose, I'm not suggesting that the Court get drawn down into the nuances of arm's length beyond principles. But the Court could clearly articulate basic principles and guides that would allow this statutory measure to have greater clarity. I articulated the four. And with respect to closeness, the nature of the relationships and defining the categories of the relationships, saying that a romantic relationship is sufficient to satisfy the presumption so that you're going to take a closer look, that's an appellate role, that's an easy call. We do not need to get down into the weeds of how many dates did they have, did they live together. That is not necessary. But a generalized principle would give sufficient guidance and that's what differentiates this. But it's particularly important because we're interpreting a statute. If there are no further questions, I would like to reserve my remaining time. Thank you.  Thank you. Roberts. Thank you, counsel. Mr. Geiser. Geiser. Thank you, Mr. Chief Justice, and may it please the Court. Petitioner's theory requires at least three appellate judges over at least two rounds of appellate review to devote extensive time and resources to recreating an entire evidentiary record and redoing a trial judge's fact-intensive work. I don't think he is. He articulated his test very simply. He wants the circuit court to say what the legal standard is. What does closeness mean? And I guess he may add some tweaks to it, but I think he would say closeness is a relationship that is not between strangers, that you have a friendship, a romantic or otherwise, but it's not between two strangers. And arm's length is a transaction in which there hasn't been a market deal, where a market deal being supply and demand, and someone's actually done due diligence on what they are demanding. It seems that that seems like pure questions of law to me. And what he's saying is that's what the circuit court didn't do here. It didn't define in any meaningful way what closeness means or what arm's length means, even as a Black's Law dictionary definition or as a subsidiary definition. It didn't give any guidance. So why aren't why isn't that questions of law? Well, Your Honor, we think if the challenge is to the legal standard, then it is a question of law and it's reviewed de novo, which is exactly what the Ninth Circuit said and did in this case. And if you look at page 17A of the petition appendix in footnote 15, it said that the bankruptcy court applied the arm's length test. And it said its entire explanation was why the transaction was at arm's length. And it described the standard in exactly the way that my friend has and the way that Justice Ginsburg did. This is a question as to whether the transaction arose as if it were between strangers. So the question before the court, though, is what is the standard of review not for challenging the legal definition, but for challenging the underlying factual determination as to whether in the real world this transaction actually occurred at arm's length. And that is exactly what the court said. Kennedy, under your view of the case, suppose there is a case that's something like this in another bankruptcy court. And the bankruptcy court said, would you please get me the Ninth Circuit opinion in Lakeside. Under your view, you said, don't read it. That's not necessarily for you to read. It's a question of fact. You don't need to know anything about what courts of appeals say. That seems to me a very strange approach. Well, Your Honor, what's happening here, it's a legal question that has to be broken into its constituent parts. One question, and you would look to the Ninth Circuit decision to have guidance here, what is the guiding legal standard? And that is it, that is the simple, is it an arm's length transaction? Do the parties conduct this in the ordinary course of business, in good faith, exercising their own independent judgment? What was their motivation for the transaction? That's the legal test. That's reviewed de novo. But it's not really the legal test according to the Ninth Circuit, right? Because the Ninth Circuit has the arm's length component of its legal test, but it also has this question whether the closeness of the relationship with the debtor is comparable to that of the enumerated insider classifications in the statute. And how any particular set of facts does or does not meet that prong of the test does not seem much of a factual question. Well, Your Honor, I assume a particular set of facts that everybody agrees to. And then the question is, well, is that sufficiently close that it's comparable to the enumerated insider classifications? That doesn't seem like any factual question I've ever heard of. Well, I think it has a serious factual component. And actually, I would submit that it is still a factual question, because the statutory enumerated categories create a yardstick. It's the benchmark. And then the factual question for the Court is, looking at the multifarious, fleeting, special, narrow circumstances that arise in all the different cases, does this particular transaction between these two people, given their relationships, the nature of the transaction, how well they knew each other, how much negotiation took place, do they look about as close as you find in the statute? Well, if Bartlett and Rabkin were married, then he would be a statutory insider, would he not? He would. All right. So because he would be a relative, and a relative is defined as somebody within the third degree of consanguinity. And I doubt that I remember this from the bar review, but I looked it up. And the third degree of consanguinity includes grandparents-in-law, brother-and-sister-in-law, grandchild-in-law. Now, how does that square with the test that the Ninth Circuit seems to be, I'm sorry, that the Bankruptcy Court seems to have applied here? Did they live together? Did they share finances? Well, what the Bankruptcy Court did, to be very clear, is they engaged in a totality of the circumstances finding, which is exactly what the controlling standard requires. It's fact-intensive. So whether they lived together and did they share finances, those are certain considerations. I mean, they weren't as close, they were not at least as close as a brother or sister-in-law? Not according to the Bankruptcy Court. But again, too, that's only one component of a totality analysis. I mean, if that's the kind of determination you think we should be deferred to under the clear error standard, that's not a very good example, is it? Well, Your Honor, I think that if the Court is concerned that there are certain degrees of closeness that need a categorical rule that binds all cases, then that would be a challenge to the legal standard. It would say that as a matter of looking at the prong, whether in conducting a totality analysis as to whether parties are sufficiently close, a court should take into account certain types of characteristics. I still would submit that that ultimately is a factual determination and is highly fact-intensive. But even if you disagree and you think this is more like a mixed question, that you need to define the legal standard and need to apply it to the facts of this case, under this Court's functional approach, asking which judicial actor is better positioned to decide these questions, we think the factors weigh overwhelmingly in favor of clear error reasoning. Why is that true? Because I have certainly heard it said, as your opponent said in answer to my question, that bankruptcy judges have a very strong tendency to want to get plans confirmed and to do what is necessary to get plans confirmed. And maybe in the heat of that, trying to make sure that the plan can be confirmed and it doesn't have to preside over a liquidation, there's a tendency to stretch things, as certainly, I mean, Judge Clifton's opinion in this case is pretty strong, that this was, this was at least, that this was clear error. What do you say to that? Well, Your Honor, I think that bankruptcy judges do act in good faith, and the Code has a need to be clear. I don't doubt that they act in good faith, but you're saying that they're better situated as an institutional matter. Why is that so? I think they're better situated for two reasons. One is that bankruptcy judges are fact-finders. They have expertise in looking at the totality of the circumstances. They're the ones with the front row seat to the witnesses here. The bankruptcy judge got to see the demeanor of the witnesses and judge their credibility. They're in a far better position to determine motivation and intent, which we submit our parts of this analysis, than would be an appellate court who has to look on a cold paper record. Roberts. Counsel, can we back up to where Justice Sotomayor started us off this morning? And that was, she pointed out that oftentimes insider status is determined on the basis of the closeness of the relationship without respect to the arm's-length nature of the transaction. That's just presumed. The Ninth Circuit has developed this two-part test, and near as I can tell, it's conjunctive. You require both closeness and lack of arm's length. Other circuits have different verbal formulations, and some haven't even weighed in. Some haven't even weighed in on the question whether there is such thing as a non-statutory insider, right? And yet, here we're being asked to decide what the right standard of review is. Can we do that with any degree of assurance when we don't know what the right legal test is? And don't we run the risk, perhaps, of sending the wrong signal to lower courts that we're adopting the Ninth Circuit or endorsing the Ninth Circuit's formulation of what the test is? Well, Your Honor, I think a couple different points to that. The first is there is some degree of difficulty of measuring between two points without knowing what one of the points is. This seems to me a high degree of difficulty. It's like one of those high dives, you know. It's a 10 out of 10 difficulty. Maybe. But I think to give you a little bit of comfort, every court of appeals that has addressed this question has effectively adopted the arm's length policy. Well, you know, I had a law clerk survey that for me, and I've looked at it, and I'm not sure I entirely agree. So help, give me some comfort on that, because I look at, like, the Fourth Circuit, for example, and they talk about sufficient authority, a closeness. They're really focused on the closeness aspect of it. And then I look at others, and they focus more on the arm's length. And I agree those are two important factors, but the degree of attention given really does seem very different across the circuits. Well, Your Honor, I think ultimately, though, the circuits have looked at this, and this includes Collier's conclusion, surveying all the relevant authority, you know, as the expert bankruptcy treatise. They've said that the test ultimately does turn on whether it's an arm's length transaction. And I think that's true. So it doesn't turn on closeness, then? But closeness is a factor. So we're not sure about that. Well, closeness is a factor that weighs into the totality analysis. But the totality analysis of the arm's length? Totality. You look at the totality of the circumstances, so that whether the parties are close is one factor that courts take into account in weighing the entire evidentiary record, which I think, again, points up to why this is a particularly So the test isn't closeness or arm's length. It's totality. Well, it's the totality of the circumstances to determine if the transaction is at arm's length. So it's arm's length. So it's arm's length. Okay. But that's, again, to this case. But that's not what the Ninth Circuit said. The Ninth Circuit said that two factors count. But ultimately, it said both. But if you read the opinion, our reading of the opinion is consistent with its view of how the Seventh Circuit approaches this and the Tenth Circuit, which is that the ultimate question is whether the parties conducted the transaction in the ordinary course of business, taking into account their own independent commercial motivations. So closeness is irrelevant. It's just whether it's arm's length, and the lack of arm's length defines closeness? Your Honor, closeness, again, is something that courts look at to determine if a transaction is at arm's length. If parties Should we wait to see what the courts of appeals sort out on all this before we decide what the standard of review is? Your Honor, if the Court would like to dismiss the case as improvidently granted, we'll take a win anyway. We can get it. But we do think, though, that the – I think any standard that the courts adopt will still require clear error review, because even if you think the standard has sufficient legal norms embedded within it, it still will ask appellate judges to take the time-consuming and inefficient task of re-weighing and re-evaluating facts. And I'm supposed that we could articulate what the right answer is based on a particular understanding of the test, and I gather there's little dispute about that. We certainly can determine exactly what we are looking at, and then make it clear and send it back. If the Ninth Circuit thinks its test is something else, then that'll be – they'll be free to apply the facts under the appropriate standard of that test. Your Honor, I think that if the Court were to remand to reconsider under a different test, I think that would actually be deciding what the test is to some extent. But again, I think as for the standard of review, the Ninth Circuit did apply de nova review to the understanding of the legal test. So the definition of the test, it clearly said, is a purely legal inquiry, and it applied de nova review in reviewing the Bankruptcy Court's decision. The question before the Court right now is, is it appropriate to have two rounds of appellate review? And again, for the five circuits that have bankruptcy appellate panels, you have six appellate judges being asked to take a highly multifarious, fleeting, special narrow fact – factual record, and reevaluating a factual determination that a bankruptcy judge made. Sotomayor, clear error shouldn't be a pass. There are errors, and some of them are clear. And so why isn't this one of those cases? That's what Judge Clifton was saying, which is on these facts, you can't sustain a finding of arm's-length transaction or a finding that there was a lack of closeness. So even under that standard, there has to be some meaning to what those two things mean and some explanation as to why this fits that. Sure, Your Honor. Oh, it doesn't. Well, that is a fact-bound, case-specific determination as to whether the Ninth Circuit correctly applied clear error review in this case. And again, the question before the Court is whether it should have applied clear error review or something else. Now, we respectively disagree with Judge Clifton's conclusion. We think that if you look to the facts, as the Bankruptcy Court found them, that this was a negotiated transaction. Dr. Rabkin went back to the debtor and asked for more money after he determined that his claim was worth more, which is what independent parties do. No, they go into a bidding war. I would have been the very first one going back and forth and saying, who's going to pay me the highest amount? But what he concluded, though, is that this is a $5,000 transaction that he made, and so it's perfectly reasonable for someone who is a sophisticated, wealthy investor to decide that additional bidding and additional negotiation just simply isn't worth his time. But again, the relevant question before the Court is whether clear error review, in fact, applies. And the Bankruptcy Court's take on this case was, I think, the right standard is to see, to say, was this an insider, was, what is her name, bought an insider? The answer is that, yes. That when she transfers her claim, the insider team travels with it. Is there any split on that question? We didn't take it, but. There is not a split on that question, Your Honor. Every circuit to look at this has understood that whether someone is an insider is a determination about the character of the person as opposed to a characteristic of the claim that they acquired. And I think that the easiest way to understand why the Ninth Circuit's determination on that point was correct is if this claim had been acquired at an anonymous auction, surely it wouldn't matter that the claim had originated with a statutory insider. But, again, that is a question that the Court did not agree to review. And looking at the other factors that this Court takes into account and looking at which judicial actor has the better institutional capacity to decide the question, it also considers the cost of the appellate court to recreate the factual determination. It looks to the cost to the parties to have to litigate multiple rounds of review on a highly fact-intensive question. Kennedy, you are assuming that it's not cost-effective for courts over a period of time to elaborate certain standards for the guidance of district finders of facts. That's not the way the system works. Your Honor, fact-bound conclusions, as this Court has said, won't produce uniform rules under de novo review or otherwise. It's simply not conducive to producing law-clarifying effects, because they're too fact-intensive. If you change certain rules. But an appellate opinion, after it makes a resolution, explains neutral standards that are principles that are applicable to other cases. That's the whole function of the judicial process. Your Honor, and if the relevant issue being challenged. You say, oh, that's inefficient. We might as well just let everybody do everything they want every time. Well, no. To be perfectly clear, if the relevant challenge, again, you have to break it into its constituent parts, is to the norm being applied or to the legal definition of the standard, that is a question of law for the Court as the Ninth Circuit held. If the question is whether the facts of this case satisfy that legal standard, that's a factual determination or maybe a mixed question. But that's still a highly fact-intensive process that is not really falling within the heartland of what appellate courts typically do. And this Court didn't find concerns about losing law-clarifying benefits to control in Highmark, where it decided exceptional cases under the Patent Act, or in issuing subpoenas in McLean, or in looking at exceptional case findings or other questions in Pierce, that there are lots of decisions that look and balance the comparative advantages of appellate courts deciding things that are inherently factual and trial courts that have expertise in doing exactly what they're doing here. And that's even if the documentary record is established. Trial judges are very good at taking a whole collection of facts and evidence and entire record and weighing components against each other. And that's especially true whereas here it involves questions of motivation and intent. An appellate court simply isn't situated to, on a cold paper record, to decide whether these parties looking in their eye really engaged in this transaction because they thought it was in their own self-interest or they were colluding or in cahoots with each other. And once all the facts are established, why is it preferable for a bankruptcy judge as opposed to a court of appeals panel to decide whether those facts make the person in question comparable to a statutory insider? I think even if the facts are established, it still requires re-weighing and balancing all of those facts, which is something that trial judges do very well and appellate judges don't do quite as well. And it distracts from the appellate court's work in addressing the true legal standards when parties are actually challenging the substance of the legal test. And in bankruptcy in particular, having de novo review encourages additional appeals, and that means it will hold up the administration of the estate, it prevents creditors from getting paid, and it prevents the reorganization of the debtor, which, again, is Congress's concern with efficiency and finality in the bankruptcy setting. But appeals are not always a bad thing. Oh, certainly not. And again, if it's a challenge to the legal standard, then it makes good sense to have de novo review. Kagan. But one way of thinking of this is that once you have the facts and the facts are uncontested and you're trying to figure out whether those facts satisfy a given legal standard here, whether they're comparably close to the statutory insiders, then what the court is then doing is trying to figure out how important each fact is given the legal test. And that sounds like a legal inquiry to me, or, you know, how important is this fact in terms of what we should be looking to, in terms of what the legal test is? Well, Your Honor, I disagree, and this is why. The courts are looking to determine if the parties really were acting as if they were strangers to the transaction, and that really turns on the evidence. And so some facts in some cases will be more important than others. Let's say you have a witness and you just don't believe him. You think that actually he was colluding with the other side. Or let's say you have an extensive period of negotiation. If you have an extensive period of negotiation or the transaction is particularly one-sided or particularly even, these are all considerations that are highly fact-intensive. And saying that we think that one factor in this given case between these parties on these facts has more weight isn't really something that produces law-clarifying benefits. It's a factual determination on a given record. Thank you, Counsel. Thank you. Ms. Goodspeed. Mr. Chief Justice, and may it please the Court, at this point, everyone agrees that questions of statutory construction are reviewed de novo and basic historical facts are reviewed for clear error. So the debate this morning is about how do we understand the bankruptcy court's finding here that two parties operated at arm's length. The government's position is not that because that is the test, that automatically is reviewed for clear error, as Petitioner suggests. The government's position is that because this is the type of test that is well-established and is familiar and is asking for a pure factual inference, that finding that comes from that test will be reviewed for clear error. Well, that seems easier to say about the arm's length part of the test than about the sufficiently close to a statutory insider part. So that's correct, Justice Kagan. Two things. First, as a general matter, as Respondent's counsel suggested, how closeness is defined is so close that you're not operating at arm's length. That's how the Court of Appeals understood it at page 14 of the Petition Appendix and again at page 17 of the Petition Appendix. And so if closeness ultimately just gets folded into the arm's length calculus, then was this transaction at arm's length is going to be the ultimate determination in the case, and that's consistent with how the leading bankruptcy court treatise discusses it, that's consistent with how the parties argued this case. And so I do think that the result of that is that even if there might be more legal sounding questions with respect to closeness, it's not really an independent prong of the test so much as folding into it. The arm's length test itself is comparable in some ways to this court's decision in Commissioner versus Duberstein. And that case dealt with what is a gift for purposes of the tax code. And this court said, you know, that's not a pure intent question, but it is essentially a factual inference drawn from all of the other facts. What we're trying to get at is what is the dominant motive for how these parties are interacting, and that's going to be a factual inference, and it's going to be reviewed for clear error. We think the same thing applies here. Does the government have a position on the, we're dealing with a crammed down safe guard. That's correct. And the bankruptcy judge that everybody is praising as having the best insight thought the test ought to be is the seller, an insider, and the detainee travels with the claim. Does the government have a position on what is the right answer to that? Yes, so at the cert stage, we agreed with respondents that what matters for purposes of insider status is the claimant rather than the claim. So it's an individual or an entity that is an insider, not a claim that has an insider status that travels with it. With respect to the bankruptcy court's competence here, we are not arguing, as I think some of these questions have alluded to earlier, that the bankruptcy court gets to define the legal rules. That if there were a creation of some multi-factor test for defining when something is at arm's length, we agree that that would be a legal question reviewed de novo. But the important thing is that in this particular case, the question that received clear air review was the question of, what at the end of the day was Dr. Rapkin trying to do here? The majority said this was a speculative investment, or at least it could have been a speculative investment. And the dissent said this was a clear favor to a friend. So it was a fight about motives, and that fight about whether under all of the facts Dr. Rapkin should be viewed as having acted in one way or the other is a classic factual interest. Ms. Goodspeed, in your brief, you put a lot of emphasis on the idea that the question of arm's length transaction is one of intent. And you just said again there, what were the party's motives? But suppose that was not true. Suppose that our understanding of what is or is not an arm's length transaction is more objective in character. Would your argument still carry the day? We don't disagree that what is or is not an arm's length transaction can actually be more objective. When we're talking about intent, we mean the same way the court used it in Duperstein, which is to say this isn't a pure subjective question, but the ultimate goal of the test is to get at what is driving these parties. And so the goal in establishing an arm's length transaction is, is this person commercially disinterested, acting like a stranger, or is this person operating under a conflict of interest? That's the more- May I ask you that question? He paid $5,000 with no diligence. He didn't know what the return on that could or could not be. How come it's an arm's length transaction if the only way he makes his money back is voting for the cram down plan? Meaning, isn't he self-interested by definition when he's buying something that depends totally on him voting with the company? Because he doesn't get paid at all if he doesn't vote with the company's cram down. Sure, Justice Sotomayor, that may be possible. I guess the thought could be, for example, there could be another plan where he would receive more money, or he could buy this claim for $5,000 and sell it to Petitioner for even more money. And so there were other possibilities other than voting for this particular plan. But I do want to say that type of argument could be an argument for why there may have been clear error here, or why this should have been considered an arm's length transaction in the first instance. And the government isn't taking a position on whether there was or was not clear error here. Whether somebody is an insider seems to be a question of status, whether it's a statutory insider or a non-statutory insider. So how do you get from a question of status to a question that examines the particulars of a particular, of a transaction and the motivation and the relationship between the parties? Sure, Justice Alito, that has been how courts have interpreted this. I think what they've essentially tried to do is apply in a Houston generous canon to the statute and say, what is the concern with all of these listed entities? And the concern with all of them is that they're going to operate under some sort of conflict of interest and not interact with the debtor in the way that a neutral person would. So I think that's how courts have extracted this arm's length test from that as a way- But isn't Justice Sotomayor correct that in a lot of areas we presume that based on the status of the individual involved or the relationship, and we don't make an inquiry into the nature of the transaction at all? That's exactly correct, and that would be correct if someone were listed in the statute. So why couldn't that also be a possible test for those who aren't listed in the statute, assuming such a class of persons exists? Sure. Which we haven't decided either, right? Yes. I mean, the way that courts have looked at this is by extracting a principle versus trying to establish other categories. That's just the general rule. I think maybe an explanation for that is that Congress drew these bright lines in the statutes, and that it's somewhat more difficult for courts to draw the same kind of bright lines for things like friendships or romantic relationships. Would it be nice to resolve that question first before deciding what the standard review is? I mean, the government's brief, I think, admirably points out, and I couldn't agree more, that determining the standard of review thus requires precise identification of the particular question raised on appeal. Yes, Justice Gorsuch. In that sense, we do think the court can still decide the question if it wishes to, because the particular question raised on appeal is what is the standard of review to be applied to this fight over whether Dr. Raab- That might be a legal-looking question. If it depends on arm's length, that might be a more factual-looking question. And we haven't resolved the relationship between those two or, in fact, whether both of them are appropriate considerations. This court hasn't resolved that, but again, what it can look to is what the Court of Appeals actually decided here. And the fight in the Court of Appeals, as illustrated by the difference between the majority and the dissent is, was this an arm's length transaction? Was Dr. Raabkin acting as a commercial stranger, or was he clearly doing a favor to a friend? So- Does the government have a view as to what the correct legal test is? The government thinks that the Courts of Appeals have adopted the correct test. It's, again, this arm's length determination is consistent with what is in the legislative history. It's consistent, we think, with what all of the listed entities are, why they're all in the statute. Well, suppose that Dr. Raabkin and Ms. Bartlett had a relationship that it was exactly like that of a married couple, except that they hadn't gotten married. They had lived together for a long time. They shared finances. They had children together. Would the transaction- Could Dr. Raabkin then not be an insider on the ground that the particular transaction was done at arm's length? Does that seem right? So, I would bookmark the possibility that courts could say, you are sort of, in fact, one of, in the listed categories, you are, in fact, a married couple, even if you are not formally given that title. That might be a different inquiry. If the courts are not going to- May I finish? If the courts are not going to do that, then we think those circumstances would weigh extremely heavily in the arm's length analysis, but may not decide it. Thank you, counsel. Mr. Cross, four minutes. Mr. Chief Justice, may it please the Court. Justice Gorsuch, I would like to come to your point. The test, what we are solving for is who does and does not satisfy insider status under the Bankruptcy Code. That's the question that the Court should have applied de novo review to. The Ninth Circuit chose its test. But if it was going to choose that test, it should have applied it through to exercise a de novo review. We are not solving necessarily for arm's length or closeness, although that's the test that the Court enunciated. And if that was the test the Court enunciated, it should have given definition to that test. And you think the test is wrong? And we didn't take that question. That's on us. I think the test is inadequate. And I think that if you affirm without applying de novo review, you perpetuate the inadequacy. Should we even attempt to answer the question, though, without the standard review, without first defining, as the government put it, the precise identification of the particular question raised on appeal? Absolutely. I mean, in every instance when this Court's looked at a statute and applied the facts of the statute, it applies de novo review. The alternative is to abdicate that rule. So you don't care. Whatever the test is, it's always going to be de novo review. It has to be de novo review because statutes have to be consistent. Assume I don't buy that. Then what should I do? Well, then I'm in trouble. Then do you want me to dig the case? I think that you go back to the opinion Justice Breyer wrote in TEVA. We distinguish between a material fact and a statutory fact. Statutes have to be given uniform application. Now, what happened here is we allowed, through the absence of de novo review, the Bankruptcy Court to develop its own test. The Bankruptcy Court did not solve for totality of circumstances here. The Bankruptcy Court went out, surveyed the other courts, and said, these five factors are determinative of insider status. That's what occurred. Now, in Miller, I don't usually read quotes, but I think this quote is right on. In Miller, the Court wrote, When relevant legal principles can be given meaning through the application of particular circumstances of a case, the Court has been reluctant to give the trier effect's conclusions presumptive force, and in so doing stripped the Federal Court of its primary function as an expositor of the law. That's exactly what the appellate court did here. It abdicated its responsibility to enunciate clear standards and to give meaning to the insider status by the exercise of clear error review. This should have been decided by de novo review. If there are no further questions, I will submit the case. Roberts. Thank you, counsel. The case is submitted.